UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:19-CV-128-TBR

FIRST FINANCIAL BANK,                                                                   PLAINTIFF
NATIONAL ASSOCIATION

v.

TIMOTHY N. WILLIAMS                                                                     DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff First Financial Bank's ("First Financial") Motion for a Temporary Restraining Order and Preliminary Injunction. [DN 4.] Defendant Timothy Williams ("Williams") responded, [DN 16], and First Financial replied, [DN 18.] Fully briefed, this matter is now ripe for adjudication. For the reasons stated herein, Plaintiff's motion for a Temporary Restraining Order is **GRANTED.**

### I.  BACKROUND

This action arises out of Defendant Williams's former employment with First Financial. Williams was Vice President of Mortgage Services for Heritage Bank from October 2013 until July 22, 2019. [DN 4-2 at 3.] Heritage Bank maintained its headquarters in Hopkinsville, Kentucky and operated in locations throughout Southwest Kentucky and Northern Tennessee. [DN 4-2 at 32.] Heritage Bank merged into First Financial on July 27, 2019. [*Id.* at 9.]

In January 2017, Williams entered into an Employment Agreement ("Agreement") with Heritage Bank. [*Id.* at 3.] The Agreement restricts Williams from: (1) working for or with a competitor for one year after termination that is located in a city Heritage maintains a branch or within 50 miles; (2) soliciting employees or clients of Heritage for one year; and (3) disclosing

confidential information of Heritage. [DN 4-2 at 3-4.] First Financial alleges Williams planned secret meetings with employees of Heritage Bank and encouraged them to remove confidential business information in violation of the Agreement. [*Id.* at 7-8.] Heritage Bank terminated Williams who began working for First Advantage. [*Id.* at 9.] First Financial also asserts Williams is in violation of the non-compete provision in the Agreement by working for First Advantage. [DN 4-1 at 12.] First Financial initiated this suit against Williams on September 5, 2019 in Christian County Circuit Court. [*Id.* at 41.] Williams then properly removed to this Court. [DN 1.]

## II. LEGAL STANDARD

To determine whether a preliminary injunction should issue under Federal Rule of Civil Procedure 65(a), the Court weighs four factors: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006). "These factors are not prerequisites that must be met but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 153 (6th Cir. 1991). "For example, the probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer absent the stay." *Blackwell*, 467 F.3d at 1009. The party seeking the preliminary injunction bears the burden of justifying such relief. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 441 (1974)).

## III. DISCUSSION

1. **Enforceability of the Agreement**

   First Financial and Williams both assert rights found in the Agreement between Williams and First Financial. The Court must first determine whether this agreement is enforceable. First Financial states the Agreement is enforceable under Kentucky law. Williams does not argue this point. Covenants not to compete that involve professional services will be enforced unless "very serious inequities would result." *Lareau v. O'Nan,* 355 S.W.2d 679, 681 (Ky. 1962). The Court agrees with First Financial that it obtained the ability to enforce such covenants after the merger of Heritage bank into First Financial. Again, Williams does not dispute this point.

   The Court must also determine whether the provisions First Financial seeks to enforce are reasonable. The Agreement restricts Williams from competing with First Financial in any county it maintains a branch and within 50 miles of such counties, and from soliciting First Financial's employees and customers. These restrictions were agreed to be in place for one year after termination of employment.

   First Financial has cited Kentucky authority that has consistently upheld similar restrictions. The Court agrees that the restrictions found in this Agreement are in line with those held to be reasonable. *See Higdon Food Service v. Walker,* 641 S.W.2d 750 (Ky. 1982); *Central Adjustment Bureau, Inc. v. Ingram Associates, Inc.*, 622 S.W.2d 681, 686 (Ky. App. 1981). Considering Williams' position within First Financial, and the restrictions agreed to, the Court finds that the restrictions are not unduly burdensome and reasonably protect First Financial's interests. *See Ceresia v. Mitchell,* 242 S.W.2d 359, 364 (Ky. App. 1951).

2. **Temporary Restraining Order**

   A. **Whether the Movant Has a Strong Likelihood of Success on the Merits**

"Although no single factor is controlling when determining whether a preliminary injunction should issue, the likelihood of success on the merits is often the predominant consideration." *Pacheco v. Waldrop,* 2013 U.S. Dist. LEXIS 81593 *14 (W.D. Ky. June 10, 2013). The Court will give great consideration to this factor. Williams argues that there is no likelihood of success on the merits because the Agreement is no longer enforceable. A finding that there is no likelihood of success on the merits is usually fatal. *See Michigan State v. Miller,* 103 F.3d 1240, 1249 (6th Cir. 1997).

Williams specifically asserts that the Agreement is unenforceable because he invoked Section 10 of the Agreement. Section 10 of the Agreement gives Williams the right to "immediately terminate this Agreement free of the obligations imposed by paragraph 7 and 8 herein in the event of a "Change of Control" of Heritage". The Agreement also allowed this option to be "exercised at any time by Employee after the effective date of a Change of Control." Williams was terminated by First Financial on July 22, 2019 and he argues, he successfully invoked his rights under Section 10 on July 29, 2019.

The Court finds no language in the Agreement—nor is there language cited by Williams— that indicates the option survived termination of the Agreement. "In the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Industries, Inc.* 103 S.W.3d 99, 106 (Ky. 2003).

Here, there is no ambiguous language. The Agreement expressly states, "[t]he provisions of paragraphs 6-9 of this Agreement shall survive its termination." [DN 4-2 at 4.] By expressly stating the survival of those specific provisions, it implies that no other provisions in the contract survive termination of the Agreement. First Financial exercised its option to terminate Williams'

employment "for cause" immediately pursuant to Section 2(a) of the Agreement. All provisions in the Agreement, excluding provisions 6-9 were terminated. Therefore, Williams continued to be bound by those provisions after termination.

### 1. Breach of Contract (Non-Competition)

First Financial first asserts a breach of contract claim for the non-compete provision. [DN 4-2 at 11.] The Court finds a strong likelihood of success. As previously stated, provisions 6-9 survived termination of the agreement. Section 7 of the Agreement restricted Williams from working for a competitor. Williams only argues that he is not bound by this restriction any more—not that his employment would not constitute a violation of this provision. The Court finds that there exists a strong likelihood that the alleged actions would constitute a breach of the non-competition section of the Agreement.

### 2. Breach of Contract (Non-Solicitation)

Section 8 of the Agreement restricts Williams from soliciting both employees and clients of Heritage. First Financial has alleged that Williams violated this provision by enticing employees to leave Heritage and by working for a competitor. Again, Williams only argues that he is no longer bound by this section. The Court finds that the alleged actions would constitute a breach of the non-solicitation section.

### 3. Breach of Contract (Confidential Information)

Section 6 of the Agreement restrict Williams from disclosing confidential information to any person and from removing the information from the premises. First Financial is asserting breach of this section by "retaining and using confidential" information. [DN 4-2 at 14.] Based on the language in the Agreement, it is a breach simply to remove such information. Williams need not use the information or documents to be in breach. If the documents Williams possessed—

and as First Financial alleges, continues to possess—are indeed confidential, it is a breach of this restriction. Therefore, the Court is satisfied that First Financial has shown a likelihood of success on the merits for the claims an injunction is sought.

### B. Whether the Movant Would Suffer Irreparable Injury Absent a Stay

First Financial argues the continued employment of Williams at First Advantage Bank will cause irreparable harm and injury. Williams, however, asserts that First Financial's claims are based on past misconduct. The Court disagrees.

Williams asserts that First Financial's claims of breach of fiduciary duty and unjust enrichment cannot serve as a basis for an injunction. The Court agrees with Williams that a past breach that presents no present or continuing harm cannot satisfy the requirements for an injunction. Fed. R. Civ. P. 65. However, First Financial seeks to enjoin Williams from violating the restrictive covenants, not the breach of fiduciary duty or unjust enrichment claims. Therefore, the Court will analyze the remaining claims for irreparable injury.

#### 1. Confidentiality Provision

First Financial asserts Williams stole confidential business information, and private customer financial information after his termination. Williams asserts that he has returned every document in his possession and never used the information. However, First Financial has identified documents including: "confidential information relating to multiple Heritage Bank existing and prospective customers; specific properties in Heritage Bank's pipeline; mortgage department budget information; job descriptions; employee compensation information; internal employee evaluation records; and more" that Williams has failed to return. [DN 18 at 8.]

It is a violation of the Agreement to possess confidential information outside of the course of employment. Section 6 of the Agreement states, "Employee…will not remove this information,

whether in original, duplicated, or copied electronic form, from the premises of Heritage, except as required in the ordinary course of Heritage's business."

If confidential information remains in the possession of a competitor, the trust First Financial has earned with its customers will be greatly damaged. The prospect of having this information in the wrong hands presents a harm to First Financial that cannot be calculated to a reasonable amount. The Court agrees with First Financial that at this stage of litigation, it would be unlikely for First Financial to definitively identify all documents it believes Williams removed. The Court finds that First Financial will suffer irreparable injury if a temporary restraining order is not granted.

### 2. Non-Compete

First Financial bases its claim of irreparable injury on loss of goodwill, and customer relationship. Due to the required disclosure of the removal of personal information, First Financial will necessarily lose at least some trust and goodwill in the community. When these disclosures are made, Williams is in a unique position to compete against First Financial with his knowledge of First Financial's business practices. It is impossible to predict with any form of certainty the amount of damages First Financial would suffer from these disclosures to its customers.

"An injury is regarded as irreparable if there exists no certain pecuniary standard for the measurement of the damages." *United Carbon Co. v. Ramsey,* 350 S.W.2d 454, 456 (Ky. App. 1961) (internal quotations omitted). Courts have consistently held that a breach of a non-compete clause and loss of goodwill constitute irreparable injury. *See Basicomputer Corp. v. Scott,* 973 F.2d 507, 512 (6th Cir. 1992) ("loss of customer goodwill often amounts to irreparable injury"); *Louisville Cycle & Supply Co. v. Baach,* 535 S.W.2d 230, 232 (Ky. 1976) (if non-compete is reasonable, equity will enjoin the breach); *Lareau v. O'Nan,* 355 S.W.2d 679, 681 (Ky. App. 1962)

("the damages the clinic might suffer…though intangible, are sufficient to justify invoking the injunctive powers of the courts…there is no adequate remedy at law.").

Williams also argues that the harms are not irreparable because Williams informed Heritage Bank that he would leave after the merger closed. If Williams did in fact inform Heritage that he was leaving, it does not change the analysis. Knowledge that Williams planned on leaving is not the same as knowledge that irreparable injury was taking place. Williams could have left and sought employment in a different field which would not have been an issue.

Further Williams asserts that First Financial waiting more than six weeks after termination to file this lawsuit is evidence that the injury is not irreparable. The Court agrees that First Financial filing suit in September was an extended period from First Financial's knowledge of Williams' alleged acts. However, this delay does not negate the Court's finding that the loss of goodwill, customer relationships, and possibly fair competition cannot be adequately calculated.

The Court is satisfied that First Financial has stated both *current and future* harms that will be irreparable if an injunction is not granted.

### 3. Non-Solicitation

First Financial alleges Williams solicited other Heritage Bank employees to terminate their employment in violation of Section 8 of the Agreement. First Financial asserts that due to this activity, it has almost lost an entire mortgage department. Any losses that would stem from this alleged activity would not be susceptible to monetary valuation.

First Financial has shown the injuries suffered cannot be properly remedied through damages awarded at the end of a trial. Therefore, First Financial has shown irreparable injury.

### C. Whether Granting the Stay Would Cause Substantial Harm to Others

First Financial asserts that the only harm that Williams would suffer, is harm that "he bargained for when he entered the 2017 Employment Agreement." [DN 4-1 at 22.] Williams does not provide any argument on this point. The Court acknowledges that enjoining Williams from working at First Advantage would create a harm. However, this harm is limited because Williams still has the ability to work with a non-competitor of First Financial. Further, as First Financial states, Williams was aware of the provisions in the Agreement that restricted his employment. Therefore, there is no substantial harm present.

### D. Whether the Public Interest Would be Served by Granting the Stay

First Financial states the public interest would be served because the public has an interest in enforcing contractual obligations. Williams does not provide argument on this point. The Court agrees with First Financial. Public policy dictates valid contracts be enforced. *See Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.,* 238 S.W.3d 644, 654 (Ky. 2007).

### IV. CONCLUSION

The Court find that the factors weigh in favor of granting a temporary restraining order.

**THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1.) Williams is restrained from, directly or indirectly, and whether alone or in concert with others, including any officer, agent, employee, and/or representative of Williams' new employer, if any, until hearing and thereafter until further order of this Court:

a.) Working with or for a competitor including, without limitation, First Advantage, in Christian, Todd, Trigg, Calloway, Marshall, and Fulton County Kentucky; Montgomery, Houston, Cheatham, Davidson, and Williamson County Tennessee; with and within fifty (50) miles from any such counties;

b.) Soliciting, directly or indirectly, any First Financial customers, clients, or employees; and

c.) Using, disclosing, or transmitting, destroying, deleting, referring to or divulging for any purpose the information contained in the confidential customer information, documents and records of First Financial and Heritage Bank.

2.) Williams, and anyone acting in concert or participation with Williams, including his agents and employer (and its employees), shall immediately return all confidential documents and information in his possession or control that in any form and in any manner pertain to First Financial or Heritage Bank. Such documents shall be provided to counsel for First Financial **within 24 hours** of the entering of this Order;

3.) This Order is binding upon Williams, his agents, and any others in active concert or participation with him who received actual notice of this order; and

4.) This Order shall remain in full force and effect for **fourteen (14) days.**

5.) A telephonic conference is set for **October 8, 2019 at 11:30 a.m. Central Time**. The Court shall place the call.

**IT IS SO ORDERED.**

*[Signature: Thomas B. Russell]*

**Thomas B. Russell, Senior Judge**
**United States District Court**

October 2, 2019

cc:counsel