UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:19-CV-00128-TBR-LLK

FIRST FINANCIAL BANK NATIONAL ASSOCIATION                           PLAINTIFF

v.

TIMOTHY WILLIAMS, *et al.*                                          DEFENDANTS

**OPINION & ORDER**

Senior Judge Thomas B. Russell referred this matter to U.S. Magistrate Judge Lanny King for ruling on all discovery motions. [DN 98].

This matter is currently before the Court on a Motion for Protective Order. On August 13, 2021, movant First Financial Bank National Association filed its 'Motion for Protective Order Regarding the Rule 30(b)(6) Deposition Notice Served by Defendant First Advantage Bank, National Association. [DN 161]. Defendant First Advantage Bank responded. [DN 162]. And the movant filed their reply. [DN 165].

The Motion is now fully briefed and ripe for adjudication.

## DISCUSSION

Plaintiff's Motion for Protective Order seeks to strike or limit sixteen topics of Defendant's 30(b)(6) Notice. The disputed topics fall into four broad categories, including: (1) damages and financials, (2) the merger, (3) John Peck's Declaration, and (4) the factual basis for assertions in Plaintiff's Second Amended Complaint. Each will be discussed in turn.

**Damages and Financials**

Plaintiff objects that topics 7, 13, 14, 20, 26, 27 and 34 are "'unreasonably cumulative or duplicative' of First Financial's April 12, 2021 Expert Report of Paul Dopp (the "Expert Report") and documents produced as exhibits thereto." [DN 161-1 at 7]. Plaintiff also independently objects to topic 20 as overbroad. *Id.* at 8.

1

> 7. The profits earned by Heritage Bank for the period beginning January 1, 2017 to the time of their resignations from the work performed by the MLOs while at Heritage Bank.
>
> 13. Identify the specific "[i] loss of competitive business advantage through its years of development of its mortgage department staff and operations; [ii] loss of mortgage department revenue; [iii] loss of confidential and proprietary information; and [iv] reputational damages," FFB claims it suffered in Paragraph 85 of the Second Amended Complaint.
>
> 14. With regard to the "loss of mortgage department revenue" alleged in Paragraph 85 of the Second Amended Complaint, the percentage of revenue that FFB claims is lost profit.
>
> 20. The damages FFB asserts it suffered, including, but not limited to: (i) compensatory and consequential damages; (ii) punitive damages; and (iii) exemplary damages, as a result of FAB's conduct.
>
> 26. FFB and/or Heritage Bank's valuations concerning Heritage Bank's Mortgage Service Department from January 1, 2018 to the present.
>
> 27. All budgets and financial statements related to FFB and Heritage Bank's Mortgage Service Department from January 1, 2018 to present.
>
> 34. Each and every mortgage loan FFB claims it would have closed but for the alleged wrongful conduct of FAB or the MLOs and the factual basis for FFB's assertion that it would have closed each loan but for the alleged wrongful conduct of FAB or the MLOs.

[161-2 at 5-7]. Defendant alleges that Plaintiff's failure to attach the relevant expert report to their motion is "by itself" grounds for denial of the motion. [DN 162 at 2 (citing *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, 2018 WL 9919939, at *7 (D. Minn. Jan. 23, 2018)). That is true in this case.

*Inline's* reasoning is persuasive where, as here, movant sought limitations on a 30(b)(6) based on the information sought being duplicative of the movant's expert reports, and, as here,

failed to attach true and correct copies of their expert report to their motion. But here, movant did not submit any portion of their report or their materials.

Movant asserts that Defendant's "argument that not attaching the expert report to the Motion is dispositive of the issue is wrong. The Motion does not state that the expert report alone is intended to replace corporate witness testimony, but that the 'documents produced thereto' fully satisfy the scope of its topics at issue." [DN 165 at 4]. However, Plaintiff cannot meet their burden to show the Protective Order is warranted because they failed to present the allegedly duplicative information on the record.

Defendant also relies upon *MP NexLevel, LLC v. Codale Elec. Supply, Inc.* as authority for the proposition that expert reports do not excuse corporate witnesses. 2012 WL 2368138, at *2 (D. Utah June 21, 2012). This case is particularly persuasive where the Plaintiff in that case attempted to argue that their failure to provide a prepared corporate witness was excused by their expert report and supporting documents. *Id.*

Plaintiff argues that *MP NexLevel* must be distinguished on the facts. Specifically, that in this case the expert report and materials were delivered before the 30(b)(6) and in that case the corporate witness failed to bring the supporting documents to the deposition. [DN 165 at 3-4]. But neither the timing of the expert report nor the 'failure to bring these documents' were dispositive of the issue. The *MP NexLevel* finding is equally applicable here: "failure to provide a prepared Rule 30(b)(6) witness is not excused by provision of an expert witness, because expert testimony is not a sufficient substitute for the testimony of a corporate representative. *Id. (*citing Fed R. Civ. P. 37(d)(2).

Defendant correctly argues that "even if the scope of these topics were not broader than the expert report, and even if Plaintiff's expert qualified as a fact witness (which he does not), FAB is

3

still entitled to obtain 30(b)(6) testimony from a corporate representative of Plaintiff." [DN 162 at 5-6]. Courts in this circuit have found that neither produced documents nor fact witnesses excuse the responsibility of providing a corporate witness on discoverable topics. *White v. City of Cleveland*, 417 F. Supp. 3d 896, 909 (N.D. Ohio 2019) (collecting cases).

Finally, Plaintiff argues that Topic 20 should be stricken because of the phrase "including, but not limited to" within the topic. [DN 161-1 at 8 (citing *Valentine v. Remke Markets Inc.*, 2012 WL 893880, at *4 (S.D. Ohio Mar. 15, 2012), *Richardson v Rock City Mech. Co., LLC*, 2010 WL 711830 (M.D. Tenn. Feb. 24, 2010))]. Neither case cited by the Defendant creates or refers to any per-se rule that this language necessarily makes a topic overbroad. Indeed, topic twenty is necessarily limited by the damages Plaintiff claims. The language is immaterial here.

**Merger**

Plaintiff objects to Topic 25 as overbroad and creating undue burden:

> 25. FFB's internal discussions and discussions with Heritage Bank personnel regarding Heritage Bank's Mortgage Services Department in connection with the merger between FFB and Heritage Bank.

[DN 161-2 at 7-8]. This issue is now moot.[1] Defendant agreed to limit this topic in time and to particular decisionmakers. [DN 162 at 7]. In their reply, Plaintiff sets the topic aside as it is "no longer at issue in this Motion". [DN 165 at 2].

---

[1] This is also true of Topic 38, as Defendant withdrew the topic from its Notice. [DN 162 at 7].

**Declaration of John Peck**

Third, Plaintiff objects to two topics seeking testimony regarding the Declaration of John Peck:

> 37. The factual basis for the assertion in Paragraph 7 of John Peck's Declaration (Dkt. No. 43-2) that "Williams encouraged key Heritage Bank sales and support staff to terminate their employment with Heritage Bank."
>
> 39. The factual basis of all statements in any Declarations executed by John Peck and filed by Plaintiff in this civil action.

[DN 161-2 at 8]. Plaintiff objects that questions into the Declaration are irrelevant, duplicative, disproportionate, and harassing. [DN 161 at 10-11]. To be sure, Federal Rule of Civil Procedure 26(b)(2)(C) dictates that where "the discovery sought is unreasonably cumulative or duplicative" the Court must limit the scope of discovery. And, here, Defendant failed to indicate any relevant and non-cumulative information they might seek related to the withdrawn declaration.

Rather, Defendant claims this information is sought "because, while at the time Mr. Peck made his Declaration, he was clearly speaking on behalf of Plaintiff, he made many of the statements in his Declaration based on information that was not his firsthand knowledge but was based on information provided to him by unnamed sources." [DN 162 at 8]. While it is clear to this Court that Defendant found both the withdrawn declaration and the personal testimony of Rick Peck unsatisfactory, it is unclear to this Court how further testimony on the issue could be anything other than unreasonably cumulative.

Defendant argues that "even had Mr. Peck testified as to his personal knowledge in his declaration, that would not preclude FAB from seeking Plaintiff's 30(b)(6) deposition on the contents of his declaration." [DN 162 at 12 (citing *White*, 417 F. Supp. 3d at 909]. To be sure, *White* correctly holds that for the same reason expert testimony does not excuse a corporate witness, neither does a fact witness. *White*, 417 F. Supp. 3d at 909. Though, that is inapplicable

5

here, because the testimony sought is not the corporation's. Instead, Defendant aimed at Rick Peck's individual knowledge and information—this is clear both facially, and through briefing, where Defendant exhaustively detailed Rick Peck's former testimony regarding the withdrawn declaration from Rick Peck's first deposition. [DN 162 at 8-12, DN 162-1]. Thus, his forthcoming second deposition is a more appropriate vehicle for those topics, to the extent the questions will not be duplicative of his first deposition.

**Second Amended Complaint**

Finally, six of Defendant's topics involving the factual basis for assertions in Plaintiff's Second Amended Complaint are disputed due to privilege:

> 9. The factual basis for FFB's assertion in Paragraph 78 of the Second Amended Complaint that FAB "willfully, maliciously, and with improper purpose, encouraged, induced, negligently permitted, and/or facilitated the actions of the [MLOs] to breach their confidentiality obligations to Heritage Bank in order to benefit its own mortgage department."
>
> 10. The factual basis for FFB's assertion in Paragraph 80 of the Second Amended Complaint that FAB "created confusion and/or disruption amongst [FFB's] employees and customers," including identifying specific instances of confusion amongst FFB's employees and customers.
>
> 12. All "confidential information," "confidential trade secret," and/or "proprietary, non-public information" that FFB claims FAB misappropriated, including in detail why FFB claims that each piece of information identified was confidential and the steps Heritage Bank and FFB took to maintain, protect and safe guard the confidentiality of each piece of identified information FFB claims FAB misappropriated.
>
> 15. The factual basis for FFB's assertion in Paragraph 88 of the Second Amended Complaint that FAB "purloined confidential trade secret information from [FFB]," including the specific trade secrets FFB alleges FAB "purloined".
>
> 16. The factual basis for FFB's assertion in Paragraph 88 of the Second Amended Complaint that "FAB competed unfairly against

6

>[FFB] in a manner intended to inflict maximum possible damage to [FFB'S] Mortgage Services Department."
>
>18. The factual basis for FFB's assertions that the relationships alleged in Paragraph 96 of the Second Amended Complaint "were reasonably anticipated to come to fruition, renew and/or continue into the immediate future."

[DN 161-2 at 5-6].

Plaintiff alleges that "[t]hese broadly worded inquiries improperly seek to elicit testimony requiring either a legal opinion or the mental impressions, legal theories and case strategies of counsel." [DN 161-1 at 11]. Plaintiff relies primarily on two inapposite cases.

The Court in *JPMorgan Chase Bank v. Winget*, 2016 WL 7242136 (E.D. Mich. Dec. 15, 2016) found that each topic, rather than being aimed at the factual basis of the claims, was "aimed at the legal theories, strategies, and conclusions of Chase and its counsel." *Id.* at *4. That is not the case here. As displayed clearly above, defendant's topics facially seeks factual information such as:

>1) Plaintiff's relationships with its customers and prospective customers; 2) FAB's conduct in competing unfairly and intent to cause maximum harm to Plaintiff; 3) Plaintiff's confidential information and trade secrets that are the subject matter of this case; 4) actual confusion and disruption to Plaintiff's employees and customers; and 5) FAB's actions taken to encourage, induce, and facilitate the departure of the mortgage loan originators and support staff to leave their employ from Plaintiff.

[DN 162 at 18]. These topics, rather than being aimed at legal theories, strategies, and conclusions, are squarely aimed at the facts underlying the Plaintiff's claims. Those facts are "the heart of all discovery" and this Court, like others in this circuit, "will not assume" the topics are "merely a pretense for asking lay witnesses to espouse on [the party's] legal theories." [DN 162 at 14 (quoting Shahbabian v. TriHealth, Inc., 2020 WL 419443

at *6 (S.D. Ohio Jan. 27, 2020))].

Second, Plaintiff argues that this Court has found similar "requests overbroad and significantly limited by the work product doctrine, [and] limited these "open ended" requests to facts, information, and documentation utilized and/or relied upon in the claim and investigation." [161 at 12 (citing *Alvey v. State Farm Fire & Casualty Co.*, 2018 WL 826379, at *7 (W.D. Ky. Feb. 9, 2018))]. However, Defendant correctly points out that "the other case cited by Plaintiff in support of its argument, this Court's opinion in *Alvey v. State Farm Fire & Casualty Co.*, 2018 WL 826379 (W.D. Ky Feb. 9, 2018), actually supports FAB's position on this motion and defeats Plaintiff's arguments." [DN 162 at 18].

In that case, Defendant argued that work product protections were waived, and that due to that waiver, sought testimony on work-product protected documents including: "1) investigation notes, 2) internal reports analyzing and evaluating the claim, 3) statements obtained from third-party witnesses, and 4) communications with counsel." *Id*. at *5. This Court concluded by noting that the permitted topics were "limited by the work-product doctrine and to the facts, information, and documentation that were utilized and/or relied upon in Alvey's claim and investigation." *Alvey*, 2018 WL 826379, at *8 (W.D. Ky. Feb. 9, 2018). The specific context of that dispute, namely the issue of waiver, justified the limiting language. Here, where Defendant does not clearly seek protected documents, it does not.

## **CONCLUSION**

The Court, having reviewed the parties' briefing in this matter, arguments from counsel, the record, and being otherwise sufficiently advised, **IT IS HEREBY ORDERED:** Plaintiff's Motion for Protective Order is **GRANTED** in part and **DENIED** in part. Topics 25, 37, 38, and

39 are hereby **STRICKEN.** Plaintiff shall adequately prepare their corporate representative(s) to address all remaining topics contained within Defendant's 30(b)(6) deposition notice.

    **IT IS SO ORDERED.**

November 2, 2021

Lanny King, Magistrate Judge
United States District Court

c:    Counsel of Record